FILED

2004 AUG 11  P 2: 01

U.S. DISTRICT COURT
UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CADLE COMPANY, | : | CIVIL ACTION NO. 3:01 CV 1103 (AHN) |
| Plaintiff, | : | |
| v. | : | |
| DAVID D'ADDARIO, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF F. FRANCIS D'ADDARIO, ET AL., | : : | |
| Defendants. | : | AUGUST 11, 2004 |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO THE MOTIONS TO DISMISS OF DAVID D'ADDARIO, LAWRENCE D'ADDARIO, VIRGINIA D'ADDARIO, ANN D'ADDARIO, AND MARY LOU D'ADDARIO

Plaintiff, The Cadle Company ("Plaintiff" or "Cadle"), respectfully submits its

Supplemental Memorandum of Law in Opposition to the Motions to Dismiss of Defendants

David D'Addario and Lawrence D'Addario (the "Co-Executors") dated October 29, 2001 (Doc.

# 34), and in opposition to the Co-Executor's Supplemental Memorandum of Law dated July

20, 2004 (the "Co-Executors' Supp. Memo.") (Doc. # 71). Plaintiff's supplemental

memorandum also responds to the supplemental memorandum dated July 22, 2004 (Doc. # 73)

that was filed by Defendants Virginia D'Addario, Ann D'Addario, and Mary Lou D'Addario,

who fully adopted the arguments asserted by the Co-Executors.

**SABIA & HARTLEY, LLC** • ATTORNEYS AT LAW
190 TRUMBULL STREET • SUITE 202 • HARTFORD, CT 06103-2205 • (860) 541-2077 • FAX (860) 713-8944

## I. **INTRODUCTION**

Despite the Co-Executors' unsupported assertion to the contrary, not one of the three state court cases involving Plaintiff, the D'Addario Estate (the "Estate"), and the Co-Executors, is duplicative of this federal action. Neither of these state court cases involves same causes of action, nor seeks the same forms of relief, as Plaintiff seeks in this lawsuit. The Co-Executors failed to present a single example of how this federal action is in any way duplicative of the state court actions.

Also contrary to the Co-Executors' unsupported assertions, the issues in this federal lawsuit were not "fully litigated up to the Connecticut Supreme Court in Cadle Co. v. D'Addario, 268 Conn. 441 (2004)." Whether or not the Co-Executors had breached their fiduciary duty to Cadle was not decided by Judge McWeeny of the Superior Court on Cadle's appeal from the probate court's decision not to remove the Co-Executors. As the Supreme Court noted: "The court made no finding of whether there had been a breach of fiduciary duty. Rather, the court focused on the lack of evidence warranting removal." Cadle v. D'Addario, 248 Conn. at 453. Indeed, as Plaintiff has previously argued in this lawsuit, Conn. Gen. Stat. § 45a-242(a) permits a probate court to conclude that the removal of an estate's executors would be unwarranted, even in the face of evidence that the executors had not met their fiduciary obligations. See Plaintiff's Memorandum of Law in Opposition ("Opposition Memorandum") dated December 14, 2001 (Doc. # 53), p. 11, n. 9. Consequently, although Cadle presented

-2-

evidence at trial of several instances in which Plaintiff argued that the Co-Executors had breached their fiduciary duty,[1] the Superior Court made no ruling with regard to this evidence. Instead, the Superior Court simply held Cadle had failed to meet its burden of proof to show that removal of the Co-Executors was warranted under Conn. Gen. Stat. § 45a-242. Cadle v. D'Addario, 248 Conn. at 453-54.

Cadle uncovered substantial evidence of the Co-Executors' breach of fiduciary duty during the course of the state court trial before Judge McWeeny. This evidence was not available to Plaintiff at the time it filed the Complaint in this lawsuit, or at the time that the Plaintiff filed its Opposition Memorandum. (Doc. # 53)[2] In particular, Plaintiff presented compelling evidence of self-dealing and conflict of interest with regard to the purchase of formerly Estate-owned real estate (the "Honeyspot Road Property") by the Co-Executors and their sister, Mary Lou D'Addario, from a third party who had obtained the real estate at a public tax lien sale. Cadle v. D'Addario, 248 Conn. at 450-51. The Co-Executors and their sister later sold the Honeyspot Road Property to an entity that had previously shown interest in the property when it was still in Estate hands. Id. The profit earned from the sale went solely to the Co-Executors and their sister, not to the Estate. Id. ("None of the profits from the sale of

---

[1]  See Cadle v. D'Addario, 248 Conn. at 450-52.

[2]  To Plaintiff's knowledge, the last interim accounting of the Estate filed with the probate court was for the period ending November 30 1996. The last interim accounting allowed by the probate court was for the period ending May 31, 1990.

SABIA & HARTLEY, LLC  •  ATTORNEYS AT LAW
190 TRUMBULL STREET  •  SUITE 202  •  HARTFORD, CT 06103-2205  •  (860) 541-2077  •  FAX (860) 713-8944

the land were taken into the estate because the property had been transferred from the estate at the tax sale."). Other evidence of self-dealing and conflict of interest that was previously not available to Plaintiff at the time it filed the Complaint and submitted its Opposition Memorandum includes the purchase of Estate-owned condominiums by the Co-Executors and other family members,[3] and evidence related to the purchase of insurance on the life of the decedent's widow and Co-Executors' mother, Ann D'Addario, the benefits of which would accrue to the Co-Executors and their siblings, and not to the Estate. Id. Plaintiff anticipates amending its Complaint in light of this evidence.

Plaintiff would also like to respond to Co-Executors' assertion that this lawsuit "has and will prolong the closing of the estate." Co-Executors' Supp. Memo., p. 2. Not only do the Co-Executors not support this assertion with any explanation, let alone any evidence, demonstrating why the lawsuit would have such an effect, but the assertion also sharply contradicts a position that the Co-Executors took in a letter to Judge Chiota of the Trumbull Probate Court on January 15, 2001. On pages 12-13 of that letter, a copy of which is attached hereto as Exhibit A, the Co-Executors stated, among other things, the following: (1) that the Estate had discussed with its "cooperative creditors" a plan that would permit closure of the Estate in six months; (2) that a final accounting would be completed prior to May 1, 2001; and (3) that "[t]he one problem that stands in the way of this quick and orderly closure of the State

_____

[3]    Interim accountings reporting these sales still have not been submitted, let alone approved, by the probate court.

-4-

is the Cadle debt . . . The Estate intends to continue to contest the Cadle debt vigorously and

has no intention of paying Cadle until this matter is finally determined." Needless to say,

although "the Cadle debt" has been "finally determined" by the Connecticut Supreme Court,

Plaintiff has not been paid and the Estate remains open.

## II.  ARGUMENT AND AUTHORITIES

### A.  Because The *Moser* and *Lefkowitz* Decisions Mark No Change In The Second Circuit's Analysis And Application Of The Probate Exception, Dismissal Remains Unwarranted.

Although, as the Co-Executors argue, the decision by the Court of Appeals for the

Second Circuit in Moser v. Pollin, 294 F.3d 335 (2d Cir. 2002), represents a reaffirmation of

the probate exception doctrine within the Second Circuit, the Co-Executors continue to fail in

their efforts to show  precisely how and why the litigation before this Court would interfere

with the proceedings in Trumbull Probate Court.  Merely saying that this federal litigation will

interfere with probate court proceedings will not make it so.

For the Moser Court, the interference of the federal lawsuit with pending New York

Surrogate's Court proceedings was plainly evident.  After setting forth the "two-part inquiry"

that federal courts should use to determine whether to apply the probate exception, the Moser

Court held that an application of the exception was warranted because the result of Moser's

federal action would wholly dictate the result of the lawsuit before the Surrogate's Court:

-5-

> What is truly significant for purposes of the probate exception's
> interference prong – and in our view ultimately dispositive – is
> the totality with which the District Court's judgment will
> predetermine the result to be reached by the Surrogate's Court
> with respect to the Amended Vacatur Petition pending before it.

Moser, 294 F.3d at 342. Also relevant in the Moser Court's analysis was the fact that the

federal lawsuit, despite the plaintiff's claims for fraudulent concealment and constructive fraud,

"is in substance nothing more than a thinly veiled will contest" that was purely probate in

character. Id. at 340-41, 345 ("The dispute between the parties turns singularly on the validity

or invalidity of the decedent's will. Expertise in this specialized inquiry falls squarely within

the province of the Surrogate's Court[.]").

Here, the Co-Executors do not, and can not, show how this federal litigation would

interfere with or predetermine any proceeding before the Trumbull Probate Court. Plaintiff's

claims for money damages that are related to the Co-Executors' acts and omissions (particularly

those acts of self-dealing and conflict of interest related to the Honeyspot Road Property, the

Estate-owned condominiums, and the insurance on the life of their mother) would neither effect

nor disrupt any current or future probate court proceedings, nor require this Court to "assume

general jurisdiction of the probate or control of property in the custody of the state court." Id. at

340. No accounting of the Estate under the auspices of the probate court would be necessary to

determine the money damages resulting from these acts and any additional acts and/or

-6-

omissions that may come to light in discovery.[4]

The decision by Judge Marrero in <u>Lefkowitz v. The Bank of New York</u>, No. 01 CV. 6252 VM, 2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003), does not change the foregoing analysis of Plaintiff's claims. The holding of <u>Lefkowitz</u> was specifically premised on the court's determination that the relief sought by the plaintiff would require the court to: (1) "determine the ownership of certain property of the estates while the probate proceedings are still continuing in state court;" (2) "conduct an accounting while the probate proceedings are still active;" and (3) "assume control over property still involved in probate proceedings in state court." <u>Id.</u>, 2003 WL 22480049, at * 4-5. None of the allegations in the Complaint, particularly those concerning property and/or assets no long in the hands of the Estate, would require such actions by this Court.[5] Not only is no accounting required for this Court to hear and adjudicate Plaintiff's claims, but no accounting is currently pending before the Trumbull

---

[4]     In light of these acts of self-dealing and conflict of interest revealed during the course of trial before Judge McWeeny, Plaintiff believes that further improper acts and omissions may be revealed in discovery. Discovery was closed on February 25, 2000 in the action to remove the Co-Executors and much of the discovery from that litigation is outdated. For example, at the time that Plaintiff took the deposition of David D'Addario, the most current interim accounting that the Co-Executors filed with the probate court covered the period ending November 1992.

[5]     To the extent that this Court holds that certain of Plaintiff's allegations and claims for relief would require this Court either to conduct an accounting and/or to assert control over Estate property, Plaintiff respectfully requests that it be permitted to amend the Complaint to limit its allegations and claims to those that would not require such involvement by this Court.

-7-

Probate Court. <u>See</u> <u>Id.</u> at * 4 (<u>citing</u> <u>Beach v. Rome Trust Co.</u>, 269 F.2d 367, 373 (2d Cir.

1959), for proposition that federal jurisdiction should be declined when, as in <u>Lefkowitz</u>, quasi

in rem accounting procedure was previously commenced in state court).

It should be noted that in their Reply Memorandum of Law In Support of Motion to

Dismiss at p. 4 (Doc. # 58) ("Reply Memorandum"), the Co-Executors argued that the

"mandate" of <u>Beach v. Rome Trust Co.</u>, <u>Barnes v. Brandrup</u>,[6] and "all other cases cited by

Plaintiff," was that "if there is an action for an accounting pending, the probate exception

prevents federal lawsuits unless and until the accounting is ordered and completed, and the

results indicate that damages are due." The Co-Executors presented this argument at a time

when Plaintiff's motion to remove the Co-Executors, which motion also sought an accounting,

was still pending before the Superior Court. Of course, now that the Connecticut Supreme

Court has affirmed the dismissal of this motion by the Superior Court, there is no "action for an

accounting pending" before any state court, superior or probate. Consequently, the Co-

Executors have no valid basis for dismissing Plaintiff's claims before this Court.[7] Indeed, the

Co-Executors' only objection to the precedent provided by Chief Judge Covello in <u>DeMarie v.</u>

<u>Silvester</u> (attached to Plaintiff's Opposition Memorandum) is also now mooted by the decision

---

[6]    506 F. Supp. 396 (S.D.N.Y. 1981).

[7]    The Co-Executors have not cited to a single case within the Second Circuit, let
alone within the District of Connecticut, that calls for the application of the
probate exception unless there has already been a final accounting of the estate
at issue.

-8-

by the Connecticut Supreme Court.  In their Reply Memorandum, the Co-Executors argued that

the DeMarie was inapplicable because "there was no pending action for an accounting, as there

is here."  Reply Memorandum, p. 5.  In light of the foregoing, this Court should look for

guidance to the DeMarie decision and retain jurisdiction of all of Plaintiff's claims.[8]

**B.**      **The Co-Executors Have Pointed To No Reason Why The *General Star* Decision, Or Any Other Decision, Should Influence This Court's Analysis Of The Colorado River Doctrine.**

General Star International Indemnity v. The Chase Manhattan Bank, No. 01 CIV.

11379, 2002 WL 950012 (S.D.N.Y. May 3, 2002) (Schwartz, J.), as the Co-Executors argue,

does indeed invoke the Colorado River abstention doctrine.  The applicability of this decision,

however, to the facts of this case, is no more forceful that any of the other decisions previously

relied upon by the Co-Executors.  Indeed, the applicability of the General Star decision may be

even less relevant because Judge Schwartz did not dismiss the action, despite the Co-Executors'

representation otherwise.  Co-Executors' Supp. Memo., p. 6.  On the contrary, Judge Schwartz

held that the action should be stayed, rather than dismissed, because a stay is preferable to a

---

[8]         The Co-Executors' efforts to distinguish the holdings of four decisions by the Second Circuit is also unavailing.  Co-Executors' Supp. Memo., p. 4-5.  The Moser and Lefkowitz Courts invoked these four decisions for the proposition that a federal court's retention of jurisdiction should not interfere with probate court proceedings.  See Moser, 294 F.3d at 343-44; Lefkowitz, 2003 WL 22480049, at * 5.  Whether or not "there were no state probate proceedings with which the federal courts could interfere," Moser at 343, is irrelevant where, as here, the pending proceedings before the Trumbull Probate Court do not intersect with the claims pending before this Court.

SABIA & HARTLEY, LLC • ATTORNEYS AT LAW
190 TRUMBULL STREET • SUITE 202 • HARTFORD, CT 06103-2205 • (860) 541-2077 • FAX (860) 713-8944

dismissal where "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." General Star, 2002 WL 850012, at * 11.

In sharp contrast to the facts before the General Star Court, there is no danger of piecemeal litigation if this Court retains jurisdiction. The General Star Court was particularly concerned about this particular factor of the Colorado River doctrine because the federal action named only three defendants, whereas a related state court action involved at least seven other defendants whose rights might have been adversely affected by the federal litigation without the opportunity to be heard: "Because other insurance companies are not parties to the present action, there is a risk on inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. In other words, a decision from the New York Supreme Court could well preclude claims before this court, but the reverse is not true[.]" Id. at * 7.

Here, there is no danger of piecemeal litigation because none of the claims in this litigation intersect with the claims before any state court. Thus, it is irrelevant for the purpose of a Colorado River doctrine analysis whether Judge Chiota of the Trumbull Probate Court currently has "had a large amount of experience with the facts and claims involved in [this] litigation." Co-Executor's Supp. Memo., at p. 5, n. 2. Moreover, even if Judge Chiota did have full knowledge of the facts of this litigation,[9] he would be powerless to act on that knowledge

---

[9]     A questionable assumption since the Co-Executors have yet to file an interim accounting covering a period later than November 30, 1996.

SABIA & HARTLEY, LLC • ATTORNEYS AT LAW
190 TRUMBULL STREET • SUITE 202 • HARTFORD, CT 06103-2205 • (860) 541-2077 • FAX (860) 713-8944

because Connecticut probate courts are not empowered to award monetary damages and, therefore, could not hear the types of claims that Plaintiff asserts here.  <u>See</u> Opposition Memorandum, p. 10-11, 32-33.

### III. <u>CONCLUSION</u>

For all the foregoing reasons, and for all the reasons presented in Plaintiff's Opposition Memoranda dated December 14, 2001 (Doc. # 53) and February 1, 2002 (Doc. # 63), this Court should deny, in their entirety, the motions to dismiss of David D'Addario, Lawrence D'Addario, Virginia D'Addario, Ann D'Addario, and Mary Lou D'Addario.

**PLAINTIFF,**
**THE CADLE COMPANY**

By _____

       Michael G. Albano
       Federal Bar CT 21440
       Sabia & Hartley, LLC
       190 Trumbull Street, Suite 202
       Hartford, CT 06103
       Telephone: (860) 541-2077
       Facsimile: (860) 713-8944
       malbano@sabiahart.com
       Its Attorneys

-11-

## CERTIFICATION

I hereby certify that a copy of the foregoing was sent to counsel by regular mail, on this 11th day of August, 2004, to the following:

Gary S. Klein, Esq.
Sandak Hennessey & Greco, LLP
970 Summer Street
Stamford, CT 06905

Allan B. Taylor, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499

Barbara S. Miller, Esq.
Brody, Wilkinson & Ober, P.C.
2507 Post Road
Southport, CT 06490

Matthew B. Woods, Esq.
Goldman, Gruder & Woods, P.C.
200 Connecticut Ave.
Norwalk, CT 06854

Allan M. Cane, Esq.
325 Reef Road
Fairfield, CT 06430


Michael G. Albano

E:\WPDOCS\CADLE\Daddario\mol.supp.opp.dismiss.coexec.wpd

-12-