# DAVID W. RUBIN
## —— ATTORNEY AT LAW ——

750 SUMMER STREET
STAMFORD, CT 06901

(203) 353-1404    FAX: (203) 357-1445

*ADMITTED IN CT & NY

RECEIVED
JAN 16 2001
TRUMBULL PROBATE COURT

January 15, 2001

Honorable John E. Chiota
Trumbull Probate Court
Trumbull, Connecticut

CERTIFIED A true copy
Attest:
_____ Clerk

Re: The Estate of F. Francis D'Addario

Dear Judge Chiota:

As ordered by the Court, the following is the Estate's report on its current status. The Estate would like to remind the Court that the following is not intended as a substitute for a formal accounting but rather is a good faith effort to provide the requested information on an interim basis. This report does not contain all of the information that will be included in the final accounting.

*A. Status of the Red Knot Debt.*

As the Court knows, effective January 1, 1998, the Estate succeeded in causing a consortium of banks that had a blanket lien on the Estate's assets to sell their debt in the amount of approximately $55 million dollars and related security to Red Knot Acquisitions, LLC. The agreement between the Estate and Red Knot gives the Estate, or its designee, an option to purchase the debt and the related collateral. The purchase price for the debt is determined pursuant to a schedule set forth in the agreement between the Estate and Red Knot. The schedule, in relevant part, is attached hereto as Exhibit A.

Since January of 1998 the Estate has concentrated its efforts on selling its assets in a prudent and expeditious manner in order to satisfy the Red Knot debt on a discounted basis as set forth in Exhibit A. Most, if not all, creditors of the Estate are junior to Red

DAVID W. RUBIN
—— ATTORNEY AT LAW ——

Knot; consequently, paying down the Red Knot debt pursuant to the above-stated schedule creates value for all of the other creditors of the Estate. The Estate has to date paid Red Knot $5,000,000. In addition, Red Knot has also received an additional $1,650,000 from a third party in connection with a legal proceeding involving the sale of some collateral in which the Estate had no equity. While there is no question that the $1,650,000 payment received by Red Knot reduces the overall $55 million debt, it is not clear as to whether it also reduces the purchase price set forth in Exhibit A. The Estate and Red Knot are in negotiations to determine whether the Estate is entitled to a credit in the amount of that third-party payment. Depending on the outcome of those current negotiations with Red Knot, the current purchase price for the balance of Red Knot's debt is set forth in Exhibit B

It should be noted that until the purchase price for the Red Knot debt is paid in full Red Knot continues to have the right to commence legal proceedings to collect its entire debt which is in excess of $55,000,000. Red Knot has indicated to the Estate that it does not intend to commence collection proceedings so long as the Executors of the Estate are not removed and the Estate continues to preserve its assets and moves toward an orderly disposition of those assets in amounts sufficient to accumulate and pay the purchase price.

*B. Assets disposed of since January 1, 1992 and application of proceeds.*

Since January 1, 1992 the Estate has disposed of the following assets:

| Real Estate Assets disposed of: | Net Proceeds: |
|---|---|
| Feb, 1992    Parcel 69, Ponus & New Canaan Ave, Norwalk | $ 91,391.55 |

Honorable John Chiota
January 15, 2001
Page 3

DAVID W. RUBIN
——— ATTORNEY AT LAW ———

| Date | Property | Amount |
|---|---|---|
| Mar, 1992 | 5-15 Dusty Lane, Newtown | $ 88,435.79 |
| Sept, 1992 | Parcel 70, Ponus & New Canaan Ave, Norwalk | $ 87,130.65 |
| Nov, 1992 | Parcel 67, Ponus & New Canaan Ave, Norwalk | $ 90,693.15 |
| Jan, 1993 | Property Located At 513, 537-539 & 559 Boston Ave, 42 And 96 Old Mill Terrace, 1799-1801, 1807-1809 And 1821-1823 East Main Street, Bridgeport | $ 1,053,907.41 |
| Oct, 1993 | Parcel 68, Ponus & New Canaan Ave, Norwalk | $ 72,208.14 |
| Nov, 1993 | 14 Dusty Lane, Newtown | $ 114,401.01 |
| Nov, 1993 | Lots 1-14, Washbrook Meadows Subdivision, Newtown | $ 563,225.81 |
| Feb, 1994 | Lots 248 - 251 And 258 - 261, Pootatuck Estates, Newtown | $ (1,444.75) |
| Mar, 1994 | Parcel 71, Ponus & New Canaan Ave Norwalk, | $ 52,558.02 |
| Mar, 1994 | 6 Toddy Hill Drive, Sandy Hook | $ 27,112.00 |

Honorable John Chiota
January 15, 2001
Page 4

**DAVID W. RUBIN**
—— ATTORNEY AT LAW ——

| Date | Property | Amount |
|---|---|---|
| May, 1994 | 32 - 36 Turkey Hill Terrace, Newtown | $ 30,225.00 |
| Jun, 1994 | Lots 178 - 182 And 13 - 25, Pootatuck Estates, Newtown | $ 20,370.64 |
| Aug, 1994 | 37 Berkshire Road, Sandy Hook | $ 120,250.72 |
| Sept, 1994 | Parcel A, Turkey Hill Road, Newtown | $ 24,651.59 |
| Apr, 1995 | 44 Toddy Hill Road, Newtown | $ 17,325.35 |
| May, 1995 | Lots 43 - 49, Nearbrook Drive, Newtown | $ 7,948.34 |
| May, 1995 | Lots 1 - 7, River Run Subdivision, Newtown | $ 119,200.00 |
| Aug, 1995 | Lots 26 - 29 Toddy Hill Drive, Newtown | $ 1,108.55 |
| Jan, 1996 | Lots 241 - 243, 8 Turkey Hill Terrace, Newtown | $ 3,654.44 |
| Feb, 1996 | Lot 3, River Run Subdivision, Newtown | $ 11,276.68 |
| May, 1996 | Unit 110, The Galleon, 4100 Gault Ocean Drive, Ft. Lauderdale, Fl | $ 148,033.35 |
| Jan, 1997 | Little Brook Knolls Subdivision, Newtown | $ 122,188.32 |

**DAVID W. RUBIN**
——— ATTORNEY AT LAW ———

| | | | |
|---|---|---|---:|
| Feb, 1997 | Lots 64 - 69, Sunnyridge Parkway, Trumbull | $ | 53,204.26 |
| Mar, 1997 | 2 Nearbrook Drive, Newtown | $ | 4,063.13 |
| Aug, 1997 | One Strawberry Hill, Stamford | $ | 106,122.16 |
| Sept, 1999 | Frenchtown Road, Trumbull | $ | 2,110,351.54 |
| Jan, 2000 | Hollow Tree Ridge Road, Darien | $ | 3,291,455.00 |
| | Total Net Proceeds - Real Estate | $ | 8,431,047.85 |

Business Assets disposed of:

| | | | |
|---|---|---|---:|
| May, 1992 | WDJZ Broadcasting Company, Inc. | $ | 168,299.49 |
| June, 1994 | Hi Ho Mall Shopping Ventures, Inc.- Mall | $ | 5,785,001.98 |
| July, 1995 | Hi Ho Mall Shopping Ventures, Inc.- Troop G | $ | 1,301,896.87 |
| Sept, 2000 | Hi Ho Tower, Inc. | $ | 8,660,291.00 |
| | Total Net Proceeds - Businesses | $ | 15,915,489.34 |

Honorable John Chiota
January 15, 2001
Page 6

**DAVID W. RUBIN**
——— ATTORNEY AT LAW ———

| | |
|---|---|
| Grand Total Of Net Proceeds | $ 24,346,537.19 |

Honorable John Chiota
January 15, 2001
Page 7

**DAVID W. RUBIN**
—— ATTORNEY AT LAW ——

The Net Proceeds received by the Estate in connection with the above described dispositions, have been applied as follows:

| Paid to: | Net Proceeds: |
|---|---|
| Red Knot | $ 5,000,000.00 |
| IRS | $ 3,815,262.79 |
| David Chase | $ 1,143,683.24 |
| State Of Connecticut Succession Tax | $ 1,242,196.00 |
| Misc. Banks on Secured Debt | $ 3,553,667.16 |
| Purchase Interest from minority shareholder to permit sale of asset | $ 1,053,907.41 |
| Real Estate Taxes - Bridgeport Mall | $ 3,542,806.00 |
| Administrative & Operating Expenses (1992 to 2000) | $ 4,350,014.59 |
| Total: | $ 23,701,537.19 |
| Reserve For Estate Administration & Operations | $ 645,000.00 |

Honorable John Chiota
January 15, 2001
Page 8

**DAVID W. RUBIN**
——— ATTORNEY AT LAW ———

C. *Amount currently owed to creditors and assets remaining in the Estate.*

The following is an estimated schedule of the Estate's administrative expenses and debt owed to Secured and Unsecured Creditors as of January 15, 2001:

| | |
|---|---:|
| Accrued Administration Expenses | 3,052,503 |
| Secured Creditor - | |
| Red Knot | 55,999,354 (1) |
| IRS/Estate | 5,297,612 (2) |
| IRS/Income | 490,108 (3) |
| Family Brass Debt (Secured) | 264,578 (4) |
| State Street Debt | 428,819 (5) |
| David Chase | 335,539 |
| Property Taxes | 925,990 (5) |
| Hudson United Bank | 47,334 |
| Total Secured Debt | 63,789,334 |

Unsecured Claims -

| | |
|---|---:|
| Family Brass (Unsecured) | 2,983,255 (5) |
| Spray Trust Claim | 14,616,498 (5) |
| Cadle/Bank of New Haven (Disputed) | 810,000 (6) |

Case 3:01-cv-01103-AHN   Document 74-2   Filed 08/11/2004   Page 9 of 20

Honorable John Chiota
January 15, 2001
Page 9

DAVID W. RUBIN
——— ATTORNEY AT LAW ———

|  |  |  |
|---|---|---|
| Total Unsecured Debt |  | 18,409,753 |
| Total | (7) | 82,199,087 |

(1)     The Red Knot debt is subject to reduction as described in Section A above.

(2)     The Estate believes that as has various unclaimed deductions related to administrative expenses that would serve to reduce the outstanding Estate Tax liability to approximately $2,700,000.

(3)     The Estate has had no current accounting on this amount from the IRS and it may be subject to increase for accrued interest.

(4)     Secured portion only

(5)     Interest calculated through December 31, 2000.

(6)     This debt is disputed. The Estate intends to appeal the decision rendered that this claim was properly made. The actual amount of the debt is unknown. Cadle has asserted at various times that the debt could be anywhere from $500,000 to as much as $1,800,000 with accrued interest.

(7)     Various contingent claims may arise in connection with on-going business activities and disputes..

The Estate assets available to satisfy the debt consist primarily of the following:

Hi-Ho Motel

Hi-Ho Fuel Oil Company including tank farm (not wholly owned)

Milford Concrete Block Plant and related real estate

Case 3:01-cv-01103-AHN    Document 74-2    Filed 08/11/2004    Page 10 of 20

Honorable John Chiota
January 15, 2001
Page 10

DAVID W. RUBIN
——— ATTORNEY AT LAW ———

Various real estate parcels- Trumbull, Connecticut

Interest in Milford Jai Lai (not wholly owned)

Derby Condemnation Proceeds- Lawsuit pending

Various real estate parcels- Newtown, Connecticut (+/- 170 acres)

Asphalt Plant Leases (not wholly owned)

Real estate parcel- Oxford, Connecticut (+/- 100 acres)

Real estate parcel- Woodbury, Connecticut (+/- 100 acres)

Storage Silos, Bridgeport, Connecticut

Long term ground lease- Fairfield, Connecticut (not wholly owned)

Milford Land Fill

Real Estate parcel- Danbury, Connecticut

Misc. other real estate parcels- various towns in Connecticut

There have been no formal appraisals of the above-listed assets since the date of death (*i.e.* 706 values). Some of the assets listed above are not readily saleable for various reasons, chief among them is that the Estate does not have sole ownership of the asset (*e.g.* long term ground lease- Fairfield, Connecticut) and in some instances is a minority partner (*e.g.* Milford Jai Lai). Even those assets that are readily saleable have marketing challenges and require significant lead time to achieve the best price. Moreover, most of the readily saleable assets are real estate based and it is anticipated that even after contracts are signed, closing would be subject to the Buyer obtaining zoning approvals, the Seller remediating environmental conditions, *etc*. Notwithstanding the foregoing, it is anticipated that asset sales currently under contract

Honorable John Chiota
January 15, 2001
Page 11

**DAVID W. RUBIN**
——— ATTORNEY AT LAW ———

as well as those where negotiations are almost concluded will result in net proceeds to the Estate of in excess of $6,000,000 over the next several months. The Estate is currently marketing other assets as well that it believes will result in additional proceeds of approximately $4,000,000 during calendar 2001. After these sales, the Estate will continue to hold many assets having significant value.

Case 3:01-cv-01103-AHN    Document 74-2    Filed 08/11/2004    Page 12 of 20

Honorable John Chiota
January 15, 2001
Page 12

DAVID W. RUBIN
——— ATTORNEY AT LAW ———

Notwithstanding the time it will take to liquidate all of these assets, the Estate has discussed with the cooperative creditors a plan that would permit closing the Estate over the next six months. The contemplated plan is as follows:

(i) The Estate is in the process of preparing tax returns and a final accounting to the Probate Court. The Estate estimates that this accounting work will be completed sometime prior to May 1, 2001.

(ii) In order to close the Estate, the Estate has the following plan to satisfy its creditors. As to the Secured Creditors:

A. David Chase, Hudson Bank and the IRS will be paid in full from assets that the Estate expects to sell within the next four to six months with the consent of Red Knot.

B. With the consent of Red Knot, miscellaneous small debts will paid.

C. The administrative expenses, which have priority over the other unsecured debt, have been funded, in large part with loans from various beneficiaries, and will be satisfied in full with the consent of Red Knot. Red Knot will be asked to permit transfer of the remaining assets of the Estate to the F. Francis D'Addario Trust u/a dated June 28, 1987 (the "Trust") in accordance with the Will of the decedent. These transfers will be made subject to the Red Knot debt. The real estate assets will be transferred subject to the property taxes outstanding at the time of transfer. The Trust will enter into an agreement with Red Knot for the orderly sale of assets in an amount sufficient to accumulate whatever balance remains at that time of the Purchase Price due Red Knot according to the schedule set forth as Exhibits A and B.

D. The Family Brass claim will be assumed by the Trust and satisfied out of the future sale of assets

E. The Estate will request that the Trustees of the Spray Trusts permit those claims to be assumed by the Trust and satisfied out the future sale of assets.

Honorable John Chiota
January 15, 2001
Page 13

# DAVID W. RUBIN
### ATTORNEY AT LAW

The one problem that stands in the way of this quick and orderly closure of the Estate is the Cadle debt. The Trust is not willing to take assets subject to the Cadle Debt. As the court knows, the Estate believes that the Cadle debt is barred and is prosecuting this defense in the pending Superior Court proceeding. The Estate intends to continue to contest the Cadle debt vigorously and has no intention of paying Cadle until this matter is finally determined.

Sincerely,

David Rubin

For the Estate of F. Francis D'Addario

EXHIBIT A

| If the month in which the closing occurs is: | The Purchase Price is: | If the month in which the closing occurs is: | The Purchase Price is: |
|---|---|---|---|
| 1/31/01 | $8,940,243.96 | 1/31/02 | $10,901,653.78 |
| 2/28/01 | $9,089,248.02 | 2/28/02 | $11,083,348.01 |
| 3/31/01 | $9,240,735.49 | 3/31/02 | $11,268,070.48 |
| 4/30/01 | $9,394,747.75 | 4/30/02 | $11,455,871.65 |
| 5/31/01 | $9,551,326.88 | 5/31/02 | $11,646,802.84 |
| 6/30/01 | $9,710,515.66 | 6/30/02 | $11,840,916.22 |
| 7/31/01 | $9,872,357.59 | 7/31/02 | $12,038,264.83 |
| 8/31/01 | $10,036,896.88 | 8/31/02 | $12,238,902.58 |
| 9/30/01 | $10,204,178.49 | 9/30/02 | $12,442,884.29 |
| 10/31/01 | $10,374,248.14 | 10/31/02 | $12,650,265.69 |
| 11/30/01 | $10,547,152.27 | 11/30/02 | $12,861,103.45 |
| 12/31/01 | $10,722,938.14 | 12/31/02 | $13,075,455.18 |

Honorable John Chiota
January 15, 2001
Page 15

## EXHIBIT B

| | Without credit for third party payment | | With credit for third party payment: |
|---|---|---|---|
| 1/30/01 | $3,418,941.83 | 1/30/01 | $1,522,417.36 |
| 2/28/01 | $3,475,924.20 | 2/28/01 | $1,547,790.98 |
| 3/30/01 | $3,533,856.27 | 3/30/01 | $1,573,587.49 |
| 4/30/01 | $3,592,753.87 | 4/30/01 | $1,599,813.95 |
| 5/30/01 | $3,652,633.10 | 5/30/01 | $1,626,477.52 |
| 6/30/01 | $3,713,510.32 | 6/30/01 | $1,653,585.48 |
| 7/30/01 | $3,775,402.16 | 7/30/01 | $1,681,145.24 |
| 8/30/01 | $3,838,325.53 | 8/30/01 | $1,709,164.32 |
| 9/30/01 | $3,902,297.62 | 9/30/01 | $1,737,650.39 |
| 10/30/01 | $3,967,335.92 | 10/30/01 | $1,766,611.23 |
| 11/30/01 | $4,033,458.18 | 11/30/01 | $1,796,054.76 |
| 12/30/01 | $4,100,682.48 | 12/30/01 | $1,825,989.00 |
| 1/30/02 | $4,169,027.19 | 1/30/02 | $1,856,422.15 |
| 2/28/02 | $4,238,510.98 | 2/28/02 | $1,887,362.52 |
| 3/30/02 | $4,309,152.83 | 3/30/02 | $1,918,818.56 |
| 4/30/02 | $4,380,972.04 | 4/30/02 | $1,950,798.87 |

Honorable John Chiota
January 15, 2001
Page 16

| | | | |
|---|---|---|---|
| 5/30/02 | $4,453,988.24 | 5/30/02 | $1,983,312.19 |
| 6/30/02 | $4,528,221.38 | 6/30/02 | $2,016,367.39 |
| 7/30/02 | $4,603,691.74 | 7/30/02 | $2,049,973.51 |
| 8/30/02 | $4,680,419.93 | 8/30/02 | $2,084,139.74 |
| 9/30/02 | $4,758,426.93 | 9/30/02 | $2,118,875.40 |
| 10/30/02 | $4,837,734.05 | 10/30/02 | $2,154,189.99 |
| 11/30/02 | $4,918,362.95 | 11/30/02 | $2,190,093.16 |
| 12/30/02 | $5,000,335.66 | 12/30/02 | $2,226,594.71 |

Honorable John Chiota
January 15, 2001
Page 13

**DAVID W. RUBIN**
──── ATTORNEY AT LAW ────

    The one problem that stands in the way of this quick and orderly closure of the Estate is the Cadle debt. The Trust is not willing to take assets subject to the Cadle Debt. As the court knows, the Estate believes that the Cadle debt is barred and is prosecuting this defense in the pending Superior Court proceeding. The Estate intends to continue to contest the Cadle debt vigorously and has no intention of paying Cadle until this matter is finally determined.

Sincerely,

*[signature]*

David Rubin

For the Estate of F. Francis D'Addario

EXHIBIT A

| If the month in which the closing occurs is: | The Purchase Price is: | If the month in which the closing occurs is: | The Purchase Price is: |
|---|---|---|---|
| 1/31/01 | $8,940,243.96 | 1/31/02 | $10,901,653.78 |
| 2/28/01 | $9,089,248.02 | 2/28/02 | $11,083,348.01 |
| 3/31/01 | $9,240,735.49 | 3/31/02 | $11,268,070.48 |
| 4/30/01 | $9,394,747.75 | 4/30/02 | $11,455,871.65 |
| 5/31/01 | $9,551,326.88 | 5/31/02 | $11,646,802.84 |
| 6/30/01 | $9,710,515.66 | 6/30/02 | $11,840,916.22 |
| 7/31/01 | $9,872,357.59 | 7/31/02 | $12,038,264.83 |
| 8/31/01 | $10,036,896.88 | 8/31/02 | $12,238,902.58 |
| 9/30/01 | $10,204,178.49 | 9/30/02 | $12,442,884.29 |
| 10/31/01 | $10,374,248.14 | 10/31/02 | $12,650,265.69 |
| 11/30/01 | $10,547,152.27 | 11/30/02 | $12,861,103.45 |
| 12/31/01 | $10,722,938.14 | 12/31/02 | $13,075,455.18 |

EXHIBIT B

| | Without credit for third party payment | | With credit for third party payment: |
|---|---|---|---|
| 1/30/01 | $3,418,941.83 | 1/30/01 | $1,522,417.36 |
| 2/28/01 | $3,475,924.20 | 2/28/01 | $1,547,790.98 |
| 3/30/01 | $3,533,856.27 | 3/30/01 | $1,573,587.49 |
| 4/30/01 | $3,592,753.87 | 4/30/01 | $1,599,813.95 |
| 5/30/01 | $3,652,633.10 | 5/30/01 | $1,626,477.52 |
| 6/30/01 | $3,713,510.32 | 6/30/01 | $1,653,585.48 |
| 7/30/01 | $3,775,402.16 | 7/30/01 | $1,681,145.24 |
| 8/30/01 | $3,838,325.53 | 8/30/01 | $1,709,164.32 |
| 9/30/01 | $3,902,297.62 | 9/30/01 | $1,737,650.39 |
| 10/30/01 | $3,967,335.92 | 10/30/01 | $1,766,611.23 |
| 11/30/01 | $4,033,458.18 | 11/30/01 | $1,796,054.76 |
| 12/30/01 | $4,100,682.48 | 12/30/01 | $1,825,989.00 |
| 1/30/02 | $4,169,027.19 | 1/30/02 | $1,856,422.15 |
| 2/28/02 | $4,238,510.98 | 2/28/02 | $1,887,362.52 |
| 3/30/02 | $4,309,152.83 | 3/30/02 | $1,918,818.56 |
| 4/30/02 | $4,380,972.04 | 4/30/02 | $1,950,798.87 |

Honorable John Chiota
January 15, 2001
Page 16

| | | | |
|---|---|---|---|
| 5/30/02 | $4,453,988.24 | 5/30/02 | $1,983,312.19 |
| 6/30/02 | $4,528,221.38 | 6/30/02 | $2,016,367.39 |
| 7/30/02 | $4,603,691.74 | 7/30/02 | $2,049,973.51 |
| 8/30/02 | $4,680,419.93 | 8/30/02 | $2,084,139.74 |
| 9/30/02 | $4,758,426.93 | 9/30/02 | $2,118,875.40 |
| 10/30/02 | $4,837,734.05 | 10/30/02 | $2,154,189.99 |
| 11/30/02 | $4,918,362.95 | 11/30/02 | $2,190,093.16 |
| 12/30/02 | $5,000,335.66 | 12/30/02 | $2,226,594.71 |